```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
___

TONY RUSSEL LAZZARA,

                          Plaintiff,

      -vs-                            **No. 6:13-CV-06325 (MAT)**
                                            **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
___

**I.   Introduction**

Represented by counsel, Tony Russel Lazzara ("plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Commissioner's motion is granted.

**II.  Procedural History**

The record reveals that in December 2011, plaintiff (d/o/b October 19, 1960) applied for DIB and SSI, alleging disability as of December 2011. After his application was denied, plaintiff requested a hearing, which was held before administrative law judge

Hortensia Haaverson ("the ALJ") on October 16, 2013. The ALJ issued an unfavorable decision on February 14, 2014. The Appeals Council denied review of that decision and this timely action followed.

### III. Summary of the Record

The medical record consists of relatively sparse treatment notes and one consulting orthopedic examination, which was performed on April 12, 2012 by Dr. Najam Zafar Sheikh. At that exam, plaintiff reported cramping and numbness in both hands "since 1991." T. 254. In 2006, plaintiff had suffered an injury in which a nail went through his left eye, rendering him blind in that eye and later requiring surgery. On physical examination, Dr. Sheikh found that plaintiff was limited in range of motion ("ROM") of the upper and lower extremities as well as in his thoracic and lumbar spine. He had full grip strength bilaterally and was "able to zip, unzip, button, and unbutton." T. 256. His left eye was blind and his right eye demonstrated 20/50 vision, with "some peripheral vision." T. 255. Plaintiff was five feet, eleven inches tall and weighed 224 pounds. Dr. Sheikh opined that plaintiff had "moderate to severe limitation in ability to perform activities such as sitting, standing, lifting, [and] carrying," and moderate limitations in fine motor activity. T. 257.

Plaintiff began treatment with Dr. Sarah Bolduc in March 2013, over a year after filing his disability applications. He indicated that he "[had] not seen an MD since 1999." T. 279. On March 19,

2013, Dr. Bolduc diagnosed plaintiff with acute orthopnea[1] and distal paresthesia, described as "pins and needles in his bilateral hands and feet." T. 279. He had a normal gait and no leg or arm weakness. Dr. Bolduc recorded, without explanation, that she was "unable" to complete a full physical examination. T. 282. On April 3, 2013, Dr. Bolduc saw plaintiff for a follow-up to an echocardiogram, the results of which were within normal limits. No abnormal results were recorded upon physical examination. Dr. Bolduc noted that plaintiff's diabetes, dislipidemia (high blood pressure), nicotine abuse, and obesity were under "sub-optimal control." T. 277. She set a weight loss goal of one to two pounds per week. She did not prescribe medication for plaintiff's diabetes, but indicated that it should be controlled with diet and exercise. She prescribed amitriptyline for tingling in the extremities.

At an annual preventive visit in July 2013, plaintiff's physical exam was essentially unremarkable. He reported ceasing taking amitriptyline because it made him feel "foggy." T. 270. Instead, he took his mother's Tylenol. Plaintiff exhibited a "[n]ormal range of motion, muscle strength, and stability in all extremities with no pain on inspection." T. 267. Plaintiff reported intermittent cocaine abuse, with a last use of April 2013. He

---

[1] Orthopnea or orthopnoea is shortness of breath (dyspnea) that occurs when lying flat, causing the person to have to sleep propped up in bed or sitting in a chair.

declined chemical dependency treatment. On October 31, 2013, in response to the ALJ's request for clarification, Dr. Bolduc responded that she had no further information regarding plaintiff's substance abuse.

**IV. The ALJ's Decision**

Initially, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2012. At step one of the five-step sequential evaluation, see 20 C.F.R. §§ 404.1520, 416.920, the ALJ determined that plaintiff had not engaged in substantial gainful activity since December 20, 2011, the alleged onset date. At step two, the ALJ found that plaintiff suffered from the following severe impairments: diabetes mellitus, obesity, status post penetrating left eye injury, and loss of visual acuity. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment.

Before proceeding to step four, the ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) in that he retained the capacity to lift and carry 20 pounds occasionally and 10 pounds frequently; he could stand or walk for six hours in an eight-hour workday, with no limitations in sitting; he was limited to jobs requiring only monocular vision; he should avoid hazards such as operating

dangerous machinery or working around heights; he should avoid climbing ladders, ropes, and scaffolds; and he should not drive at night.

At step four, the ALJ found that plaintiff was unable to perform past relevant work as a machine builder. At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy which he could perform. Accordingly, the ALJ determined that plaintiff was not disabled.

**V.   Discussion**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

  **A.   RFC Finding**

Plaintiff contends that the ALJ failed to develop the record and therefore had insufficient evidence from which to formulate an RFC. Plaintiff argues that "[t]he only medical opinion evidence [from consulting physician Dr. Sheikh] supports limitations greater than contained in the RFC finding, and the remaining evidence in

5

[p]laintiff's treatment notes are inadequate to establish [p]laintiff's level of functioning." Doc. 8-1 at 9. For the following reasons, the Court finds that the ALJ's RFC finding was supported by substantial evidence in the record.

### 1.  Dr. Sheikh's Opinion

The ALJ assigned "little weight" to Dr. Sheikh's consulting opinion, finding that Dr. Sheikh's opinion that plaintiff had "moderate to severe" limitations in sitting, standing, lifting, and carrying" were too vague and that his "physical examination was not particularly adverse," such that the restrictive limitations were inconsistent with the examination. T. 15. The ALJ "assigned a light RFC with postural, environmental, and visual limitations based on objective findings of obesity, diabetes, loss of visual acuity and depth perception, and subjective complaints of pain." T. 16. Plaintiff argues that the ALJ's RFC finding lacks substantial evidence because it does not track Dr. Sheikh's opinion. However, the ALJ was not required to adopt any limitations that were inconsistent with other substantial evidence of record. See Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

6

Although Dr. Sheikh assessed "moderate to severe" limitations in plaintiff's functioning, severe limitations were not supported by his examination or the medical record, which indicated largely unremarkable physical examinations and was notable for a complete lack of treatment with regard to functions involving sitting, standing, lifting, or carrying for the time period from 1999 through 2013. Even upon treatment with Dr. Bolduc, plaintiff did not complain of limitations in sitting, walking, or standing, but complained primarily of tingling in his extremities. After Dr. Bolduc prescribed medication for that condition, plaintiff ceased it on his own and instead took Tylenol. Considering this record, the ALJ was within her discretion to adopt Dr. Sheikh's opinion only to the extent that it was consistent with other substantial evidence of record.

## 2. ALJ's Duty to Develop the Record

Plaintiff argues that the ALJ failed to develop the record, contending specifically that the record lacked treatment records, the ALJ failed to request a treating physician opinion, and the ALJ failed to request a consulting eye examination. Although the medical record is sparse, there is no indication that any documentation is actually *missing* from the record. Rather, the plaintiff himself reported to Dr. Bolduc that, before beginning treatment with her in March 2013, he had not seen a physician since

7

1999.[2] Thus, there is no indication that any attempt to further develop this record would have been fruitful. See Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) ("[W]here there are *no obvious gaps* in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.") (emphasis added) (internal quotation marks omitted). Additionally, "[e]ven though the ALJ has an affirmative obligation to develop the record, it is the plaintiff's burden to furnish such medical and other evidence of disability as the Secretary may require." Long v. Bowen, 1989 WL 83379, *4 (E.D.N.Y. July 17, 1989) (internal citations omitted).

Here, the medical record contains little evidence of physical impairments affecting plaintiff's ability to perform full-time work. Dr. Bolduc's treatment records, as noted above, reveal relatively unremarkable physical impairments and medical conditions which could be addressed through diet and exercise. Plaintiff's ophthalmologist indicated that his right-eye vision could be corrected with glasses. Additionally, to the extent that Dr. Sheikh found moderate limitations in plaintiff's functioning, that finding

---

[2] Although plaintiff made a passing reference to a neurologist in his testimony, plaintiff was represented at the hearing and his counsel did not request that the record be left open for any additional medical evidence to be submitted. Additionally, plaintiff reported to Dr. Bolduc in April 2013 that he had seen a neurologist about a month before "and told that everything was ok." T. 274. Thus, there is no indication that any further medical documentation exists which would have been likely to affect the ALJ's decision.

8

was consistent with the ALJ's finding that plaintiff could perform less than the range of light work.[3] As the Commissioner points out, this Court has found "moderate" limitations in sitting, standing, and walking to be consistent with a finding that a claimant can perform light work. See Harrington v. Colvin, 2015 WL 790756, *14 (W.D.N.Y. Feb. 25, 2015); Carroll v. Colvin, 2014 WL 2945797, *4 (W.D.N.Y. June 30, 2014) ("[C]ourts have upheld an ALJ's decision that the claimant could perform light or sedentary work even when there is evidence that the claimant had moderate difficulties in prolonged sitting or standing."). Under these circumstances, the ALJ was not required to request a treating physician's opinion. See Tankisi v. Comm'r of Soc. Sec., 521 F. App'x, 33 33–34 (2d Cir. 2013) (holding that it was not *per se* error for ALJ to make disability determination without seeking opinion of treating physician, where record was otherwise complete); see also Walker v. Astrue, 2010 WL 2629832, *7 (W.D.N.Y. June 11, 2010) ("'[W]here the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment.'") (quoting Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 17 (1st Cir. 1996)).

---

[3] For this reason, the Court finds plaintiff's argument, that the ALJ relied solely on her own lay interpretation of the medical records, unpersuasive. See Matta, 508 F. App'x at 56 (noting that ALJ's RFC determination is not required to "perfectly correspond" with any one medical opinion).

Plaintiff also argues that the ALJ should have obtained a consulting vision examination. However, the record was sufficient to support the ALJ's conclusion that plaintiff's visual impairment consisted of left eye blindness and lack of depth perception. At a vision examination in January 2012, plaintiff's ophthalmologist "explained to [plaintiff] that he [was] not legally blind." T. 252 (emphasis in original). She prescribed glasses to correct his vision. Additionally, although plaintiff's eye injury and surgery took place in 2006, he was able to work for 5 years beyond that, until December 2011, despite his eye condition. Therefore, the ALJ was under no duty to more fully develop the record with respect to plaintiff's eye impairment. See Serianni v. Astrue, 2010 WL 786305, *5 (N.D.N.Y. Mar. 1, 2010) ("An ALJ is not obligated to send a litigant for a consultative examination if the facts do not warrant or suggest the need for such an examination."); see also Haskins v. Comm'r, 2008 WL 5113781, *7 n.5 (N.D.N.Y. Sept. 11, 2008) (finding no duty to order consultative intelligence evaluation where evidence did not support work-related functional limitations resulting from a possible mental impairment).

### 3. Function-By-Function Assessment

Contrary to plaintiff's arguments, the ALJ's discussion indicates that she considered the full medical record when coming to her RFC determination. Because the Court can glean the ALJ's reasoning from her decision, the lack of a specific function-by-

function analysis constituted harmless error. See Henry v. Colvin, 2015 WL 8074299, *7 (W.D.N.Y. Dec. 4, 2015) (finding that "ALJ's failure to provide a function-by-function analysis of the claimant's functional limitations constituted harmless error where an extensive medical history supported the RFC and the claimant's treating physicians declined to provide a functional assessment detailing his limitations"); Goodale v. Astrue, 32 F. Supp. 3d 345, 357 (N.D.N.Y. 2012) ("[A]n ALJ's failure to provide a function-by-function analysis . . . constitute[s] harmless error, provided that the absence of the analysis did not frustrate meaningful review of the ALJ's overall RFC assessment."); Drennen v. Astrue, 2012 WL 42496, *5 (W.D.N.Y. Jan. 9, 2012) ("Although he did not specifically conduct the analysis, the ALJ went into explicit detail as it pertained to the plaintiff's medical history.").

**B.  Credibility**

Plaintiff contends that the ALJ erroneously assessed plaintiff's credibility. Plaintiff testified that he was unable to work due to left eye blindness, "severe floaters" in his right eye, and arthritis.[4] As to his work history, plaintiff testified that most of his jobs in the last 15 years had lasted for about six

---

[4] Notably, Dr. Bolduc did not note a diagnosis of arthritis, although she did treat plaintiff for tingling in the extremities as discussed above. Plaintiff also testified that he took medication for arthritis, but Dr. Bolduc's treatment notes do not reflect that.

months, and that he obtained those jobs through temp agencies. See T. 31. The ALJ found:

> The claimant's allegations lack credibility for the following reasons: (1) [His] eye surgery was in 2006. Yet, he was able to work for another five years before alleging disability. (2) There is no precipitating event in December 2011, to lead the claimant to believe that he became disabled at that particular time. (3) Though the complaint complains of arthritis in his statements . . ., objective findings are not particularly adverse. (4) The claimant takes only his mother's Tylenol for pain. (5) Prior to establishing care with a physician in March 2013, the claimant had not seen a doctor since 1999. (6) Contrary to his allegation, the claimant is not legally blind. (7) The claimant is not on any medication for diabetes, and the treating source recommends only diet and weight loss to control diabetes. (8) The claimant makes inconsistent statements concerning his substance abuse, and these lessen his credibility. (9) Despite his alleged legal blindness, the claimant is still able to drive a car, read, walk and use public transportation, cook and do cores [*sic*], and do volunteer work.

T. 16 (internal citations omitted).

Under well-established precedent, "[i]t is the function of the [ALJ] . . . to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983). Here, the ALJ included detailed reasoning as to why she deemed plaintiff not fully credible. The ALJ's discussion, which incorporates her review of the testimony and references relevant authorities including 20 C.F.R. §§ 404.1529, 416.929 and SSRs 96-4p and 96-7p, indicates that she used the proper standard in assessing credibility. See Britt v. Astrue, 486 F. App'x 161, 164 (2d Cir. 2012) (finding explicit mention of 20 C.F.R. § 404.1529 and

SSR 96-7p as evidence that the ALJ used the proper legal standard in assessing the claimant's credibility). Accordingly, her credibility determination will not be disturbed.[5]

## VI. Conclusion

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Doc. 8) is denied and the Commissioner's motion (Doc. 10) is granted. The ALJ's finding that plaintiff was not disabled is supported by substantial evidence in the record, and accordingly, the Complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                      **S/Michael A. Telesca**
                                      _____
                                      Honorable Michael A. Telesca
                                      United States District Judge

Dated:    October 26, 2016
             Rochester, New York.

---

[5] The Court notes plaintiff's arguments that the credibility determination was "inaccurate and unsupported." Doc. 8-1 at 25. However, based on a review of the record, the Court finds that the ALJ's credibility determination was supported by substantial evidence. Specifically, plaintiff's gaps in treatment, conservative treatment, and activities of daily living belied his testimony as to an inability to perform work on a full-time basis. See 20 C.F.R. §§ 404.1529, 416.929 (describing factors relevant to credibility determination); Taylor v. Colvin, 2016 WL 1049000, *8 (N.D.N.Y. Mar. 11, 2016) (ALJ properly considered gaps in treatment where credibility determination was not based "on that one factor alone"); Rivera v. Colvin, 2015 WL 6142860, *6 (W.D.N.Y. Oct. 19, 2015) ("ALJ was entitled to consider evidence that plaintiff pursued a conservative treatment as one factor in determining credibility") (citing Netter v. Astrue, 272 F. App'x 54, 56 (2d Cir. 2014)); Crowley v. Barnhart, 220 F. Supp. 2d 176, 180 (W.D.N.Y. 2002) (ALJ properly considered activities of daily living as one factor in credibility determination).